[No. 6318.]

ESTATE OF JOHN B. CLARK, DECEASED.

WHEN EXECUTOR TO BE CHARGED WITH INTEREST.—If an executor mingle the money of the estate with his own, and employ the joint fund for a series of years in conducting the business of farming, he shall be charged, on the settlement of his account, with legal interest, to be computed with annual rests; and the same rule will prevail even though it appear that he was at all times able to respond for the trust fund, whenever payment of it should be properly demanded.

APPEAL from the Probate Court of Humboldt County.

H. S. Daniels, executor of the estate of John B. Clark, deceased, petitioned the Probate Court for the settlement of his account and distribution of the estate. The devisees, through their attorney, excepted to the settlement of the account.

The petition of the executor alleged that since July, 1866, he had not kept any separate account of the moneys of the estate, but had mingled them with his own; and during said time had used some or the greater part in his own business.

That he was, during all of said time, solvent and prepared at any and all times, upon call, to pay over said moneys when demanded, and has always been in readiness so to do.

That he had not loaned said money at interest, nor received from any person for the use thereof, nor realized from the use thereof by himself, any sum in excess of the amount charged against petitioner in his account filed.

The will of deceased did not direct or require that the executor should loan the money upon interest.

The executor charged himself with legal interest. The Court below charged him with interest at the rate of one and one-quarter per cent. per month, compounded annually, such being the usual rate in the County during the period that the money was held by the executor.

The executor appealed.

*J. J. De Haven* and *Cope & Boyd*, for Appellant.

The executor was not directed or required by the will to loan the trust fund upon security or otherwise; and in such cases, when the executor uses the funds in his own private business, the general rule is stated to be, that " he will be liable to pay simply interest at the rate established by law as the legal rate in the absence of special agreements. This rule is subject to the qualification that trustees cannot make any advantage to themselves out of the trust fund; and if they make more than legal interest they shall pay more." (Perry on Trusts, sec. 468.)

And the above appears to be quoted with approval by this Court in *Estate of McQueen*, 44 Cal. 589.

Perhaps as clear a statement of the rule as can be found is the following. The italics are ours:

" So, too, if he mingle them with his own money; and he is in all such cases to be charged with simple interest, *although he may not have received that amount.* But if the trustee employ the trust fund in trade or in any other mode, *whereby he makes more than simple interest,* he will be charged with the whole profits, either by way of compound interest, or in any other mode which, in the opinion of the Court, will best carry out the principle of giving the *cestui que trust* the benefit of all profits made. The Courts allow simple interest only in cases when it is obvious the trustee could not have received more. But when the amount received by the trustee is doubtful, as to whether it exceed simple interest, and where it clearly does exceed, the *cestui que trust* is allowed his election between simple interest and the actual profits, to be ascertained by reference. In stating accounts, periodical rests and compound interest are merely convenient expedients adopted by the Courts of Equity to charge the trustee with the amount of profits supposed to have been received by him upon the trust funds, when the actual amount beyond simple interest cannot be ascertained. This seems to us the fullest and fairest statement of the rule, as received and applied in this country, which we have been able to find. It is generally acted upon in that State where the cases involving the question are more numerous and important than in any other in America." (2 Redfield on Wills, sec. 12, p. 886; *Utica Ins. Co.* v. *Lynch,* 11 Paige, 523–4.)

An executor, as such, is not permitted to loan funds. That would of itself be a breach of trust. (*Jacott* v. *Emmett,* 11 Paige, 145.)

There is nothing in the case of *Estate of Holbert,* 39 Cal. 600, opposed to this. That was a case of an express trust, to loan money on good security, and instead of complying with the direction of the will, the executor used the money himself, and the Court very properly held that he must put the *cestui que trust* in as good condition as if he had complied with the trust, or in other words, that the *cestui que trust* should not be made to suffer a loss by the breach of the trust, and the decision of

the Court upon that state of facts is sustained by all the author-
ities. (2 Story's Equity, sec. 1273*a*; Perry on Trusts, secs. 469,
472; 11 Vesey, 107 ; 13 Vesey, 592.)

And precisely that would be the measure of damage in a
Court of Law, in an action to recover damages for willful breach
of an undertaking to loan money. (Civil Code, sec. 3300.)

But the rule applicable to a case like the one at bar is the
one above quoted from Redfield on Wills, which has been ex-
pressly sanctioned and applied by this Court, in a case similar
to this, in *Estate of Stott.* In that case, speaking of the amount
to be charged an executor, who had mingled the trust funds
with that of a firm of which he was a member, this Court say :
"The general rule applicable to such cases is that the trustee
shall be charged with legal interest with annual rests." If that
rule governs here, the order appealed from must be materially
modified as to the rate of interest to be charged.

*J. M. Melendy* and *W. H. Brumfield*, for Respondent.

It is immaterial as to what the profits were. The devisees
could elect to take interest. It was the duty of the Court to
charge such a rate as would cover the profits which it must be
presumed the executor made. (Code of Civil Procedure, secs.
1, 13, 1614.) The Court was administering this particular law.

In the *Estate of Holbert*, 39 Cal. 600, the Court, upon facts
the same as in the case at bar, charged the executor with the rul-
ing rate. 'There the will directed the money to be loaned ; but
here it was the duty of the executor to invest the fund at the
ruling rate. (Perry on Trusts, secs. 452, 471 ; Civil Code,
secs. 2258, 2261, 2262.)

Had the will, in the case at bar, directed the money to be in-
vested, it would have made the duty of Daniels to invest no
more binding. It is immaterial whether it was his duty to in-
vest or not, as he did invest by loaning it to himself. It was a
gross violation of duty to use it himself, but having done so, he
ought to pay the estate as high interest as he was compelled to
pay others. The Court adopted a rule less rigid. He paid one
and one-half, and still prospered in business. Had he desired,

he could have been discharged from his trust. (*Walls* v. *Walker*, 37 Cal. 429.) But he elected not to be discharged while he was paying one and one-half per cent. As he did use the money, and the devisees are entitled to all the profits, the burden is on him to disclose them. He is unable or unwilling to do this, hence the Court could only fix a rate that would reach the profits, or presumed profits. (Perry on Trusts, secs. 452, 471; *John's Administrator* v. *Hedrich et al.* 33 Ind. 129; Ibid. 191; *Walker* v. *Walker*, 9 Wall. 44; *Hook* v. *Payne*, 14 Wall. 452; *Gunter* v. *Janes*, 9 Cal. 661.)

Appellant claims that he should be charged with only legal rate. This is less than he admits the profits to have been, and would not satisfy the rule in *Holbert's Estate*, which is that he should pay legal interest when he permitted the fund to lie idle; and would violate the rule established by this and other Courts of Equity.

The Court was justified in stating the account with annual rests. The yearly profits were put into the business, and annual rests or compound interest were necessary to reach them. (*Scheiffelin* v. *Stewart et al.*, 1 John. Ch. 620; *DePeyster* v. *Clarkson*, 2 Wend. 77.)

By the Court, CROCKETT, J.:

There is no difference in principle between the present case and that of the *Estate of Stott*. In that case and in this, the executor mingled the trust fund with his own, and employed it in his business. In the former case the executor was a merchant, and for a series of years used the money of the estate, mingled with his own in his business; while, in the present case, the executor was a farmer, and used the trust fund in conjunction with his own for a number of years, in conducting his farming operations. From the very nature of their transactions, it would be extremely difficult, and perhaps impracticable, to ascertain with any degree of accuracy what profit was realized from the trust fund; and in the case of the *Estate of Stott*, we held that the proper rule in such cases was to charge the executor with legal interest, computed with annual rests.

It was shown that the executor in the former case, and in this, were at all times able to respond for the trust fund, whenever its payment should be properly demanded; but we held that this circumstance did not exonerate them from interest, to be computed with annual rests, as above stated.

Judgment and order reversed, and cause remanded, with an order to the Court below to modify its judgment in accordance with this opinion.

Mr. Chief Justice WALLACE did not express any opinion.